UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-Civ-14153-CANNON/MCCABE

DUSTIN ALLAN WAYMAN SIMS,

    Petitioner,

vs.

STATE OF FLORIDA,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

**THIS MATTER** comes before the Court upon Dustin Allan Wayman Sims' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (DE 1), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 21). After reviewing the record (DE 14-1, DE 15-1, DE 16-1, DE 25-2, DE 27-1), the parties' briefs, and the applicable law, the undersigned recommends that the Petition be **DENIED**.

**I.    OVERVIEW**

Petitioner brings this action against the State of Florida[1] pursuant to 28 U.S.C. § 2254(d), which provides relief to persons held in custody pursuant to state court decisions that are (1) "contrary to … clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts." Petitioner alleges that Florida courts violated his clearly established Fourteenth Amendment due process rights by sentencing him to life in prison under the Prison Releasee Reoffender ("PRR") provisions of

---

[1] Petitioner named the "State of Florida" in his Petition. The Florida Department of Corrections is currently holding Petitioner in custody and has therefore responded to the Petition on behalf of the State.

section 775.082(9)(a)1., Florida Statutes (2015), without the benefit of retroactive application of *State v. Lewars*, 259 So. 3d 793 (Fla. 2018), a Florida Supreme Court case that Petitioner contends would have lowered his sentence (DE 1 at 17-18). As a result, Petitioner argues he received a disparate sentence as compared to at least one other defendant in the same procedural posture who received a non-PRR sentence (DE 1 at 19).

The Petition requires the Court to resolve three issues:

(1) Whether Petitioner timely filed this action;

(2) Whether Petitioner properly exhausted his federal constitutional claims in state court before filing this Petition; and

(3) Whether the Petition alleges meritorious claims for violation of Petitioner's clearly established due process rights under the Fourteenth Amendment.

## II. BACKGROUND

### A. Conviction and Sentence

On August 28, 2015, the State charged Petitioner by amended information with robbery with a deadly weapon (Count 1), aggravated assault with a deadly weapon (Count 2), burglary of a structure while armed (Count 3), burglary of a conveyance while armed (Count 4), and third-degree grand theft (Count 5) (DE 14-1 at 4). The evidence at trial showed that Petitioner burgled a church and vehicle (DE 14-1 at 705, 797) and robbed a church pastor while armed with a knife (DE 14-1 at 504-05, 703, 705, 797). Petitioner stole a laptop computer and cell phone (DE 14-1 at 511, 705, 754, 797). After a two-day trial, the jury found Petitioner guilty on all counts (DE 14-1 at 7-9, 742-44).

The trial court sentenced Petitioner on October 19, 2015 (DE 14-1 at 750-810). At sentencing, the State sought to qualify Petitioner for PRR status pursuant to section 775.082(9)(a)1., Florida Statutes (2015), which mandated enhanced penalties for defendants who

committed certain qualifying offenses "within 3 years of being released from a state correctional facility…." Under the statute, once the State proved PRR status, the trial court had no discretion, as to any defendant found guilty of an offense punishable by up to life imprisonment, but to impose a mandatory term of life imprisonment. *See* § 775.082(9)(a)3.a., Fla. Stat. (2015).

The State argued Petitioner qualified for PRR status because he committed his offenses within three years of release from a previous term of imprisonment, whereby he had served a year and a day for violation of probation (DE 14-1 at 25, 31, 777-78). Defense counsel opposed PRR status on the grounds that Petitioner did not serve his previous term in "a state correctional facility" as required by the PRR statute; rather, he served his previous term in a county jail (DE 14-1 at 779-80). The State rebutted this by citing *Louzon v. State*, 78 So. 3d 678 (Fla. 5th DCA 2012), a case that affirmed PRR sentencing for a defendant who served his previous term in a county jail, not a Florida Department of Corrections ("FDOC") facility (DE 14-1 at 768).

After hearing argument, the trial court followed *Louzon*, 78 So. 3d at 678 and sentenced Petitioner to life imprisonment (DE 14-1 at 53-55, 808-09).

**B.     Direct Appeal**

On October 27, 2015, Petitioner appealed his conviction and sentence to Florida's Fourth District Court of Appeal ("DCA") (DE 14-1 at 65-66). Petitioner raised several arguments, including his eligibility for PRR status based on his previous term in a county jail, as opposed to FDOC facility (DE 14-1 at 83-87). The Fourth DCA affirmed Petitioner's conviction and sentence on November 2, 2016, citing *Louzon*, 78 So. 3d at 678 and *Taylor v. State*, 114 So. 3d 355 (Fla 4th DCA 2013), both of which held that previous release from a county jail qualified a defendant for PRR status under Florida law. *See Sims v. State*, 202 So. 3d 954 (Fla. 4th DCA 2016).

Petitioner did not seek further review with the Florida Supreme Court. As such, his conviction and sentence became final on January 31, 2017.[2]

### C. Rule 3.850 Motion

On November 18, 2018, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (DE 14-1 at 140-67). Petitioner raised numerous grounds for relief, but did not raise his PRR status or any issue relating to the constitutionality of his sentence (DE 14-1 at 142-44, 166). The state trial court denied the motion in part on May 2, 2019 (DE 14-1 at 175-77) and in full on November 21, 2019 (DE 14-1 at 205-06). The Fourth DCA affirmed the trial court's order on April 2, 2020 (DE 14-1 at 213).

### D. *State v. Lewars*, 259 So. 3d 793 (Fla. 2018)

While Petitioner's Rule 3.850 motion was pending, on December 13, 2018, the Florida Supreme Court decided *Lewars*, 259 So. 3d at 793, a significant case addressing the PRR statute. In *Lewars,* a defendant who had been released from a county jail – as opposed to FDOC facility – received a PRR sentence. *Id.* The Florida Supreme Court decided, as a matter of statutory construction, that the phrase "state correctional facility" does not include a county jail. *Id.* at 800. The Florida Supreme Court expressly disapproved *Taylor*, 114 So. 3d at 355 and *Louzon*, 78 So. 3d at 678 – cases cited by the Fourth DCA in affirming Petitioner's conviction and sentence. *Id.* at 802-03.

### E. First Rule 3.800(a) Motion

Shortly after the *Lewars* decision, on January 18, 2019, Petitioner filed his first motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (DE 14-1 at 217-20, DE 15-1 at 7-10). Petitioner argued that *Lewars* should be applied retroactively to his

---

[2] Respondent asserts that Petitioner's conviction and sentence became final on January 31, 2017 (DE 13 at 9). Petitioner does not challenge this date.

4

own case, citing *Witt v. State*, 387 So. 2d 922 (Fla 1980), and other Florida cases analyzing retroactivity under Florida law (DE 14-1 at 218).

On May 2, 2019, the state trial court denied the motion (DE 14-1 at 227-28). The court reasoned that (1) Petitioner's sentence had become final two years before the *Lewars* decision, and (2) the *Lewars* decision did not apply retroactively to sentences that had already become final (DE 14-1 at 227). Petitioner filed a timely notice of appeal to the Fourth DCA (DE 14-1 at 230).

### F. House Bill 7125

While Petitioner's appeal was pending, the Florida legislature amended section 775.082(9)(a)1., Florida Statutes during the 2019 legislative session, as follows:

> (9)(a)1. "Prison releasee reoffender" means any defendant who commits, or attempts to commit:
>
> [qualifying offenses]
>
> within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor, <u>a county detention facility following incarceration for an offense for which the sentence pronounced was a prison sentence</u>, or ~~within 3 years after being released from~~ a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

Ch. 2019-167, § 30, at 37-38, Laws of Fla. (amending § 775.082(9)(a)1. Fla. Stat. (2019)). The amendment became effective on October 1, 2019. *Id.* § 156, at 190. The practical effect of the amendment was to undo the *Lewars* decision.

### G. Fourth DCA Decision on Petitioner's First Rule 3.800(a) Motion

Thereafter, on November 27, 2019, the Fourth DCA affirmed the trial court's denial of Petitioner's first Rule 3.800(a) motion. *See Sims v. State*, 286 So. 3d 292 (Fla. 4th DCA 2019). The Fourth DCA concluded that *Lewars* did not apply retroactively, reasoning:

> Applying *Witt* analysis here, we conclude that *Lewars* does not apply retroactively. First, the Florida Supreme Court has not held that *Lewars* applies retroactively. Additionally, we find persuasive the Second District's reasoning that *Lewars* "is an evolutionary refinement ... law and not a development of fundamental significance, a major constitutional change, or jurisprudential upheaval that requires retroactive application to cases on collateral review."

*Id.* at 293-94 (citations omitted).

Petitioner filed a timely notice of appeal to the Florida Supreme Court (DE 14-1 at 278-79). On April 16, 2020, the Florida Supreme Court declined to accept jurisdiction, thereby denying the petition for review (DE 14-1 at 314).

### H. *Williams v. State*, 304 So. 3d 843 (Fla. 1st DCA 2020)

Next, on November 4, 2020, Florida's First DCA issued an opinion in *Williams v. State*, 304 So. 3d 843 (Fla. 1st DCA 2020). In that case, yet another defendant who had served a previous sentence in a county jail received a PRR sentence under the pre-*Lewars* interpretation of the PRR statute. *Id.* During the course of his direct appeal, Williams had requested the First DCA to certify conflict with the Second DCA over proper interpretation of the PRR statute, but the First DCA had declined to do so. *Id.* Subsequently, the Florida Supreme Court decided the *Lewars* case to resolve the very same conflict, doing so in a manner that would have favored Williams. *Id.*

As a result, Williams filed a postconviction petition for a writ of habeas corpus, which the First DCA granted, reasoning:

> Because Petitioner asked for certification of conflict with *Lewars*, it would be manifestly unjust under the circumstances to deny Petitioner the same relief as was afforded the defendant in *Lewars*.

*Id.* The First DCA therefore vacated Williams' PRR sentence and remanded for resentencing in accordance with *Lewars* (not in accordance with the newly revised version of the PRR statute). *Id.*

### I.     Second Rule 3.800(a) Motion

In the wake of *Williams*, 304 So. 3d at 843, Petitioner filed a second Rule 3.800(a) motion on March 11, 2021 (DE 25-2 at 73-77).  Petitioner argued he should be given the same relief afforded in *Williams* (DE 25-2 at 74, 77).  He also argued, for the first time, that *Lewars* applied to his case based on Florida's "pipeline" doctrine (DE 25-2 at 74).  The state trial court denied the motion on April 15, 2021 (DE 25-2 at 79-80), and the Fourth DCA affirmed the denial on August 26, 2021 (DE 25-2 at 147).

On April 1, 2021 (before the state trial court decided the second Rule 3.800(a) motion), Petitioner filed this federal habeas petition (DE 1).

### III.    ANALYSIS

Petitioner brings this action pursuant to 28 U.S.C. § 2254(a), which provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).  Here, Petitioner alleges Florida courts violated his clearly established rights under the due process clause of the Fourteenth Amendment.  The Court addresses threshold issues below, before proceeding to the merits.

### A. Timeliness

Federal law sets forth strict time limits for filing habeas petitions. As to persons held in custody pursuant to a state court judgment, such petitions must be filed within one year of the latest of several alternative dates, including:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> …
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The Court addresses each subsection below.

#### 1. Subsection (A)

As to subsection (A), i.e., "the date on which the judgment became final," the Fourth DCA affirmed Petitioner's sentence and conviction on November 2, 2016 (DE 14-1 at 136). Petitioner's sentence therefore became final ninety days later on January 31, 2017 (DE 13 at 9). Under subsection (A), Petitioner had until January 31, 2018, to file this Petition. He did not do so until April 1, 2021 (DE 1).

The statute provides for tolling of this deadline by "a properly filed application for State post-conviction or other collateral review." *See* 28 U.S.C. § 2244(d)(2). In this case, however, Petitioner did not file his first postconviction motion until November 18, 2018 (DE 14-1 at 140-67). By that point, the deadline imposed by subsection (A) had already passed. Accordingly, the Petition is untimely under subsection (A).

### 2. Subsection (C)

Alternatively, Petitioner argues the Court should apply subsection (C), i.e., "the date on which the constitutional right asserted was initially recognized by the Supreme Court" (DE 15 at 3). Petitioner argues this provision applies based on the Florida Supreme Court's decision in *Lewars*, 259 So. 3d at 793. The Court disagrees. The phrase "Supreme Court" in subsection (C) refers to the United States Supreme Court, not the Florida Supreme Court. *See Alvarez v. Crews*, No. 13-60664-CIV, 2014 WL 29592, at *5 (S.D. Fla. Jan. 3, 2014) (explaining that subsection (C) pertains only to opinions of the United States Supreme Court). Also, *Lewars* did not recognize a new federal constitutional right; it merely decided a matter of Florida sentencing law. Accordingly, the Petition is untimely under subsection (C).

### 3. Subsection (D)

The Court has also considered subsection (D), i.e., "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (DE 15 at 3). In particular, the Court has considered whether the decisions in *Lewars*, 259 So. 3d at 793 or *Williams*, 304 So. 3d at 843 qualify as "facts" under subsection (D).

The Court finds that *Lewars* does not qualify. In *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005), the Ninth Circuit faced a similar issue, where a habeas petitioner argued that a recent California Supreme Court decision qualified as a new "factual predicate" for purposes 28 U.S.C. § 2244(d)(1)(D). The *Shannon* court rejected the argument, reasoning that a change or clarification of state law cannot qualify as a new "factual predicate." *Id.* at 1088; *see also Barreto-Barreto v. United States*, 551 F.3d 95, 99 n.4 (1st Cir. 2008) (finding that discovery of new legal theory does not constitute discoverable "fact" for purposes of § 2255(f)(4)); *Solliday v. United States*, No. 12-23402-Civ, 2013 WL 12196594, *3 (S.D. Fla. Oct. 28, 2013) (finding that the changing legal

landscape "in light of Supreme Court's recent decisions" "does not constitute a discoverable fact for purposes of § 2255(f)"). *Lewars* announced a clarification of Florida law and cannot be considered a new "fact."

As to *Williams*, 304 So. 3d at 843, the Court reaches a different conclusion. *Williams* did not change or clarify existing law, and Petitioner does not rely upon *Williams* for that purpose. Instead, Petitioner points the sentencing result obtained in *Williams* as a historical fact, arguing that he stood in the same procedural posture as Williams, yet Florida courts failed to treat him in the same manner as Williams with regard to retroactive application of *Lewars*. In this regard, the Courts agrees that *Williams* qualifies as a new "fact," not a change in law.

The Court finds support in *Johnson v. United States*, 544 U.S. 295, 302 (2005), where the Supreme Court found a habeas petitioner's vacatur of his own previous state court conviction to be a new "fact" for purposes of 28 U.S.C. § 2255, holding: "We agree with Johnson that the state-court vacatur is a matter of fact for purposes of the limitation rule…." In that case, the Supreme Court nevertheless found the petition untimely based on the petitioner's failure to pursue the vacatur with due diligence. *Id.* No such problem exists here, because the new "fact" at issue arose not in Petitioner's own case, but in another case over which he had no control, namely, *Williams*. The Court therefore finds this Petition timely, but only to the extent it raises a Fourteenth Amendment due process claim based on an alleged disparity with the *Williams* case.

### 4. Tolling

For the sake of completeness, the Court also addresses Petitioner's argument that the Florida Supreme Court's decision in *Lewars* gives rise to equitable tolling. To qualify for equitable tolling, a habeas petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v.*

*Florida*, 560 U.S. 631, 649 (2010); *see also Diaz v. Sec'y for Dep't of Corrs.*, 362 F.3d 698, 702 (11th Cir. 2004) (characterizing the equitable-tolling standard as a two-part test, stating that "equitable tolling is available only if a petitioner establishes *both* extraordinary circumstances and due diligence"); *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011) (describing equitable tolling as a "rare and extraordinary remedy").

The Court finds equitable tolling does not apply. A mere change in law – such as the change announced in *Lewars* – does not qualify as an "extraordinary circumstance" sufficient to invoke equitable tolling. *See Outler v. United States*, 485 F.3d 1273, 1281(11th Cir. 2007) ("[T]he change of law worked by *Castro* does not constitute extraordinary circumstances," and, therefore, did not warrant equitable tolling); *Howell v. Sec'y Fla. Dep't of Corrs.*, 730 F.3d 1257, 1261 (11th Cir. 2013) (change in law did not constitute an "extraordinary circumstance" warranting the reopening of a prior judgment); *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("[A] change in decisional law is insufficient to create the 'extraordinary circumstance' necessary to invoke Rule 60(b)(6)."); *Alvarez v. Crews*, No. 13-60664-CIV, 2014 WL 29592, at *5 (S.D. Fla. Jan. 3, 2014) ("A change in the law is not an extraordinary circumstance, warranting equitable tolling.").

### B.    Exhaustion

Next, a habeas petitioner must exhaust state court remedies before filing a federal habeas petition. To satisfy this requirement, a habeas petitioner must "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corrs.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up). While a petitioner need not "cite book and verse on the federal constitution," *Duncan v. Henry*, 513 U.S. 364, 365 (1995), he must "alert[ ] the [state] court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). He accomplishes this only when a "reasonable reader would

understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y, Dep't of Corrs.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004). Once a petitioner has "fairly presented" his federal claim to the state trial and appellate courts, he must then "present that exact same claim to the federal courts – adjacent claims or nominally similar claims do not make the cut." *Green v. Sec'y, Dep't of Corrs.*, 28 F.4th 1089, 1158 (11th Cir. 2022) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

Here, the undersigned has reviewed Petitioner's state court direct review briefs (DE 14-1 at 77-94), his Rule 3.850 briefs (DE 14-1 at 140-67, 179-90), and his first and second Rule 3.800(a) briefs (DE 14-1 at 217-20; DE 15-1, at 3-4; DE 25-2 at 73-77, 128-45). Based on this review, Petitioner did not "fairly present" any federal constitutional claims to the state courts. Instead, Petitioner raised issues related to state sentencing law, state retroactivity analysis, and the state appellate doctrine of "manifest injustice" (DE 14-1 at 78, 144, 153, 158, 163, 180, 182, 184, 218, 284; DE 16-1 at 2; DE 25-2 at 74). A "reasonable reader" would not infer from these state-law arguments that Petitioner was attempting to raise federal constitutional claims.

Having failed to exhaust federal constitutional claims before the state court, Petitioner cannot raise these claims in a federal habeas petition. The Petition should be denied on this basis.

**C. Merits**

Turning to the merits, Petitioner alleges that Florida courts violated his clearly established Fourteenth Amendment due process rights by sentencing him to life in prison under the PRR statute. Within the umbrella of due process, Petitioner raises three sub-arguments: (1) Florida courts erred by failing to apply the *Lewars* decision retroactively to him; (2) Florida courts erred by failing to apply the *Lewars* decision based on the "pipeline doctrine"; and (3) Florida courts erred by failing to treat him in the same manner as another similarly situated defendant, namely,

12

Williams (DE 1 at 19). For the sake of completeness, the Court addresses all arguments, even those barred on procedural grounds.

### 1. Failure to Apply *Lewars* Retroactively

Petitioner's first argument raises no cognizable constitutional claim. In November 2019, the Fourth DCA issued a thorough opinion, explaining why *Lewars* did not apply retroactively under Florida law, reasoning:

> Applying *Witt* analysis here, we conclude that *Lewars* does not apply retroactively. First, the Florida Supreme Court has not held that *Lewars* applies retroactively. Additionally, we find persuasive the Second District's reasoning that *Lewars* "is an evolutionary refinement ... law and not a development of fundamental significance, a major constitutional change, or jurisprudential upheaval that requires retroactive application to cases on collateral review."

*Id.* at 293-94 (citations omitted). This decision does not raise or implicate issues of federal constitutional law.

Federal habeas relief is available only to correct federal constitutional injury. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding errors that do not infringe a defendant's constitutional rights provide no basis for federal habeas corpus relief). Questions of state law and procedure "rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir.1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053-54 (11th Cir.1983)). "Mere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Barclay v. Florida*, 463 U.S. 939, 958-59 (1983) (citations omitted). Here, the Court finds no error in the application of state law, let alone an error that "for some other reason" rises to the level of a federal due process violation. *Id.* The Petition should be denied on this ground.

### 2. Pipeline Doctrine

Petitioner's pipeline argument likewise raises no cognizable constitutional claim. Under Florida's "pipeline doctrine," the "disposition of a case on appeal should be made in accord with the law in effect at the time of the appellate court's decision rather than the law in effect at the time the [underlying] judgment appealed was rendered." *Perez v. State*, 120 So. 3d 49, 53 (Fla. 4th DCA 2013). This rule allows criminal defendants to benefit from a new, favorable appellate decision issued in another case, provided the defendant's own case is still in the appellate "pipeline" at the time of the new decision. "[P]ipeline cases … [are] cases in which an appellate court mandate has not yet issued on direct appeal." *Id.* at 54.

Petitioner raised the pipeline argument in his second Rule 3.800(a) motion, arguing he was still in the pipeline at the time of the *Lewars* decision and, thus, should have received the benefit of it (DE 25-2 at 74). Petitioner conceded the mandate had issued on his own direct appeal two years prior to *Lewars*, but argued he nevertheless qualified for pipeline status because he had a Rule 3.850 motion pending at the time of the *Lewars* decision (DE 25-2 at 73-74). In support, Petitioner cited *Castano v. State*, 119 So. 3d 1208, 1210 (Fla. 2012), where the Florida Supreme Court addressed pipeline application of *Padilla v. Kentucky*, 559 U.S. 356 (2010), a Supreme Court case finding ineffective assistance of counsel based on a lawyer's failure to advise a client of the mandatory deportation consequences of a guilty plea. In that case, the Florida Supreme Court found *Padilla* applied, not only to traditional pipeline cases, i.e., those where the mandate had not yet issued on direct appeal, but also to postconviction cases with a pending Rule 3.850 motion at the time of the *Padilla* decision. *Castano*, 119 So. 3d at 1210 (Pariente, J., concurring) (noting that, in contrast to traditional pipeline cases, *Padilla* decided an issue typically raised only in postconviction proceedings i.e., ineffective assistance of counsel). As such, the court allowed

14

retroactive application because Castano had "timely raised the same postconviction claim as the defendant in *Padilla* and the resolution of [Castano's] claim was still pending at the time *Padilla* was decided." *Id.*

The state trial court never reached the merits of this argument, instead denying the second Rule 3.800(a) motion as procedurally barred (DE 25-2 at 79). The State's response brief nevertheless distinguished *Castano,* 119 So. 3d 1208, by pointing out that Castano's Rule 3.850 motion raised the exact same issue as the postconviction motion in *Padilla* – failure to warn of the deportation consequences of a guilty plea (DE 25-2 at 84). In Petitioner's case, by contrast, his first Rule 3.850 motion (the one pending at the time of the *Lewars* decision) had nothing to do with PRR statute. Petitioner filed subsequent postconviction motions raising the PRR issue only *after* the *Lewars* case was decided. By way of analogy, Florida courts refused to allow retroactive application of *Padilla* to defendants who filed their postconviction motions on *Padilla* grounds *after Padilla* was decided. *See Lopez v. State*, 144 So. 3d 631 (Fla. 4th DCA 2014) ("Appellant filed this timely rule 3.850 motion seeking to withdraw his plea on June 2, 2010, after *Padilla* had been decided. We have held that *Padilla* does not apply retroactively in this situation.").

The Court finds no federal constitutional claim here to redress. Likewise, the Court finds no error in the application of state law that "for some other reason" gives rise to a due process violation. *See Barclay*, 463 U.S. at 958-59 ("[M]ere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution."). The Petition should be denied on this ground.

### 3. Dissimilar Treatment

Petitioner next argues the state courts violated his due process rights by failing to treat him in the same manner as the defendant in *Williams*, 304 So. 3d at 843. Both Petitioner and Williams filed postconviction proceedings seeking retroactive application of *Lewars*; Williams got the relief he sought while Petitioner did not. Following oral argument, the Court requested supplemental briefing on whether a clearly established federal due process violation occurs when state courts apply their own retroactivity analysis differently to two defendants in the same procedural posture (DE 24). Petitioner responded by citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982), holding that the equal protection clause of the Fourteenth Amendment prohibits dissimilar treatment of similarly situated persons (DE 25 at 4). The Court need not decide whether the due process clause carries a similar proscription. Rather, as set forth below, the Court finds that Petitioner and Williams were not similarly situated at the time they received their disparate results.

As to Petitioner, his conviction and sentence became final on January 31, 2017 (DE 14-1 at 136, DE 13 at 9). At the time of Petitioner's direct appeal, none of Florida's DCAs had yet adopted the position the Florida Supreme Court eventually took in *Lewars*, 259 So. 3d at 802-03, namely, that a previous term of incarceration in a county jail failed to satisfy the PRR statute. Petitioner filed no motion to certify a conflict because no conflict existed.

Williams' case arose in a far different and highly unusual context (DE 26 at 5). During the course of Williams' direct appeal with the First DCA, the Second DCA decided *Lewars v. State*, 277 So. 3d 143 (Fla. 2d DCA 2017) – the case that later went to the Florida Supreme Court. The Second DCA ruled in favor of Lewars, marking the first time any DCA decided the PRR "county jail" issue in a manner favorable to a defendant. After the First DCA affirmed Williams' conviction in a per curiam opinion, *see Williams v. State*, 277 So.3d 52 (Fla. 1st DCA 2017),

16

Williams quickly moved to certify the newly existing conflict among the DCAs (DE 27-1 ¶ 5). For reasons unclear, the First DCA denied the motion (DE 26 at 3).

Later, of course, the Florida Supreme Court accepted jurisdiction to resolve the very same conflict among the DCAs, and the court resolved the conflict in a manner that would have been favorable to Williams. *See Lewars*, 259 So. 3d at 793. By the time the Florida Supreme Court decided *Lewars*, however, it was too late for Williams to receive any benefit from the new decision. By denying Williams' motion to certify conflict, therefore, the First DCA had blocked Williams from receiving a benefit that, in all likelihood, he would have received.

In apparent recognition of this unusual situation, the First DCA granted Williams' postconviction petition for writ of habeas corpus to vacate his PRR sentence. *See Williams*, 304 So. 3d at 843. The court reasoned that, "[b]ecause Petitioner asked for certification of conflict with *Lewars*, it would be manifestly unjust under the circumstances to deny Petitioner the same relief as was afforded the defendant in *Lewars*." *Id.*

The First DCA based its decision on the doctrine of "manifest injustice." *Id.* This doctrine allows Florida appellate courts "the power to reconsider and correct erroneous rulings made in earlier appeals in exceptional circumstances and where reliance on the previous decision would result in manifest injustice." *State v. Akins*, 69 So. 3d 261, 268 (Fla. 2011) (cleaned up). Under this doctrine, when "the court finds that a manifest injustice has occurred, it is the responsibility of that court to correct the injustice if it can." *Adams v. State*, 957 So. 2d 1183, 1186 (Fla. 3d DCA 2006). In short, Williams found himself in a highly unusual procedural posture that allowed him to take advantage of the *Lewars* decision by way of a postconviction motion, but only because failure to do so would have resulted in "manifest injustice."

17

Petitioner, in contrast, never found himself in the same procedural posture as Williams. Petitioner's conviction became final two years before *Lewars* was decided, at a point in time when no conflict existed among the DCAs over the proper interpretation of the PRR statute. To the extent a federal due process violation arises based on the failure to afford similar retroactivity treatment to similarly situated defendants, the Court finds no such violation here because Petitioner and Williams were not similarly situated. Likewise, the Court finds no error in the application of state law, let alone error that "for some other reason" rises to the level of a due process violation. *See Barclay*, 463 U.S. at 958-59 ("[M]ere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution."). The Petition should be denied on this ground.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court ("Habeas Rules") provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner must show that "jurists of reason" would find debatable both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Franklin, v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)).

The Court recommends that a certificate of appealability be granted on the following issues:

(1) Whether Petitioner properly exhausted his federal constitutional claims in state court and, specifically, whether Petitioner's arguments regarding "manifest injustice" (DE 25-2 at 73, 129) can be interpreted as raising a federal due process argument;

(2) Whether Petitioner alleged a meritorious federal due process violation and specifically (a) whether the defendant in *Williams v. State*, 304 So. 3d 843 (Fla. 1st DCA 2020) was in the same procedural posture as Petitioner at the time Williams received the benefit of *State v. Lewars*, 259 So. 3d 793 (Fla. 2018); and if so (2) whether a clearly established federal due process violation occurs when state courts apply their own retroactivity analysis differently to two defendants in the same procedural posture.

Additionally, under Rule 11(a) of the Habeas Rules, the Court "may direct the parties to submit arguments on whether a certificate [of appealability] should issue." To the extent the parties object to the recommended certificate here, they should raise such objections as set forth in section V below.

## V.   RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Petitioner Dustin Allan Wayman Sims' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (DE 1) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1*; see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE and RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 27th day of October 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE