UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14153-CIV-CANNON/McCabe

**DUSTIN ALLAN WAYMAN SIMS**,

    Petitioner,

v.

**STATE OF FLORIDA**,

    Respondent.
_____/

**ORDER ACCEPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION ON 28 U.S.C. § 2254 PETITION**

**THIS CAUSE** comes before the Court upon the Petition for Writ of Habeas Corpus by a state prisoner filed by Dustin Allan Wayman Sims ("Petitioner") pursuant to 28 U.S.C. § 2254 [ECF No. 1]. On October 28, 2022, Magistrate Judge Ryon M. McCabe issued a Report and Recommendation on the Petition (the "Report") [ECF No. 28]. The Report determines that a portion of the Petition is timely under 28 U.S.C. § 2244(d)(1)(D) of the Antiterrorism and Effective Death Penalty Act (AEDPA) but ultimately recommends (1) dismissal of the Petition for lack of exhaustion and (2) denial of the Petition on the merits because it raises no cognizable or redressable federal constitutional claim [ECF No. 28]. Respondent filed objections to the Report, disagreeing with the Report's conclusion on timeliness but otherwise agreeing with the Report [ECF No. 29]. Petitioner likewise filed objections to the Report, challenging the Report's exhaustion and merits-based conclusions [ECF No. 30].

Upon a de novo review, the Court **ACCEPTS IN PART AND REJECTS IN PART** the Report. The Court **ACCEPTS** the Report's recommendation to dismiss the Petition for lack of

exhaustion and to deny the Petition on the merits. The Court **REJECTS** the Report's determination that the decision by Florida's First District Court of Appeals in *Williams v. State*, 304 So. 3d 843 (Fla. Dist. Ct. App. 2020), granting post-conviction relief to a defendant in another case constitutes a new "fact" sufficient to render the Petition timely under 28 U.S.C. § 2244(d)(1)(D) [ECF No. 28 pp. 9–10].

## BACKGROUND

### Underlying State Criminal Case

On August 28, 2015, less than two years after being released from a county jail for a prior conviction and sentence related to firearm and theft charges, the State charged Petitioner by amended information with the following charges: robbery with a deadly weapon (Count 1), aggravated assault with a deadly weapon (Count 2), burglary of a structure while armed (Count 3), burglary of a conveyance while armed (Count 4), and third-degree grand theft (Count 5) [ECF No. 14-1 pp. 4–5, 14]. During a two-day trial, the prosecution produced evidence showing that Petitioner burgled a church and vehicle, robbed a church pastor at knife point, and stole a laptop and cell phone [ECF No. 14-1 pp. 504–05, 703–05, 754, 797). At the conclusion of the trial, the jury found Petitioner guilty on all counts [ECF No. 14-1 pp. 7–9, 742–44].

On October 19, 2015, the trial court sentenced Petitioner to life in prison on Counts I, III, and IV pursuant to the Prisoner Releasee Reoffender ("PRR") provisions of sections 775.082(9)(a)(1) and 775.082(9)(a)(3) of the Florida Statutes (2015) [ECF No. 14-1 pp. 806–09]. These sections mandated enhanced penalties, including life in prison, for defendants who committed certain qualifying offenses "within 3 years of being released from *a state correctional facility* . . . ." Fla. Stat. § 775.082(9)(a)(1) (2014) (emphasis added). In doing so, the trial court rejected Petitioner's argument that Petitioner did not qualify as a PRR because he served his

previous sentence in a *county jail* as opposed to a *state correctional facility* [ECF No. 14-1 pp. 779–80].  The trial court rejected Petitioner's argument by relying on persuasive authority from Florida's Fifth District Court of Appeals, specifically, *Louzon v. State*, 78 So. 3d 678 (Fla. Dist. Ct. App. 2012) [ECF No. 14-1 pp. 781–95].[1]  In *Louzon*, the Fifth District Court of Appeals rejected the same argument that Petitioner made at sentencing, namely, that a defendant could not qualify as a PRR when the defendant is released from a county jail as opposed to a state correctional facility.  *Louzon*, 78 So. 3d at 680–81.  Accordingly, the trial court determined that it had no discretion under the law and was required to sentence Petitioner to life in prison pursuant to the PRR statute [ECF No. 14-1 pp. 806–07].

### **Direct Appeal to Fourth District Court of Appeals**

On October 27, 2015, Petitioner appealed his conviction and sentence to Florida's Fourth District Court of Appeals [ECF No. 14 pp. 68–69].  The Fourth District affirmed on November 2, 2016, citing to the Fifth District's decision in *Louzon* and its own decision three years before in *Taylor v. State*, 114 So. 3d 335 (Fla. Dist. Ct. App. 2013) [ECF No. 14 pp. 78, 139].  *Sims v. State*, 202 So. 3d 954, 955 (Fla. Dist. Ct. App. 2016).  Petitioner did not seek further review with the Florida Supreme Court.  As such, his conviction and sentence became final 90 days later, on January 31, 2017.  *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Applying the rule in *Kaufmann*[2] to the present case, Appellant was entitled to file a petition for a writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court.  The statute of limitations under 28 U.S.C. § 2244(d) should not have

---

[1] Petitioner was convicted and sentenced in the Nineteenth Judicial Circuit in and for St. Lucie County, which is part of Florida's Fourth District Court of Appeal.

[2] *Kaufmann v. United States,* 282 F.3d 1336 (11th Cir. 2002).

3

begun to run until this 90–day window had expired." (internal citation and footnote omitted)); Fed. R. Civ. P 6(a)(1) ("When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period . . . .").

### Rule 3.850 Post-Conviction Motion

On November 18, 2018, 656 untolled days later, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 [ECF No. 14-1 pp. 140–67]. Although Petitioner's Rule 3.850 Motion referenced the trial court's determination that Petitioner was classified as a PRR, the Rule 3.850 Motion did not raise that issue as a basis for postconviction relief [ECF No. 14-1 pp. 140–67]. Instead, Petitioner argued in the Rule 3.850 Motion that he was entitled to such relief because his trial counsel was ineffective through a combination of (1) failing to seek suppression of the victim's out of court line-up identification; (2) failing to object to, or mount any defense supported by expert testimony to rebut, fingerprint evidence; and (3) failing to object to statements that were prejudicial toward Petitioner [ECF No. 14-1 pp. 144–63]. The trial court denied the motion in part on May 2, 2019, and in full on November 2, 2019 [ECF No. 14-1 pp. 175–77, 205–06]. On April 2, 2020, the Fourth District Court of Appeals affirmed the trial court's order [ECF No. 14-1 p. 213].

By the time Petitioner filed his Rule 3.850 Motion, the federal limitations period had expired, and the Rule 3.850 Motion did not toll the federal limitations period. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (holding that a properly filed application for state postconviction relief does not provide statutory tolling of the AEDPA limitations period where the motion for state postconviction relief was not filed until after section 2244(d)'s one-year limitation period had expired). While Petitioner's Rule 3.850 Motion was pending, however, the Florida Supreme Court held in *State v. Lewars*, 259 So. 3d 793 (Fla. 2018), that a defendant who is released

from a county jail rather than a state correctional facility does not qualify as a PRR. *Id.* at 802–03. In doing so, the Florida Supreme Court expressly rejected the Fifth District Court of Appeals' decision in *Louzon*. *Id.* at 802.

### Rule 3.800(a) Motion to Correct Illegal Sentence

Following the *Lewars* decision, and while Petitioner's Rule 3.850 Motion was still pending, Petitioner filed his first Rule 3.800(a) Motion under the Florida Rules of Criminal Procedure to correct an illegal sentence [ECF No. 14-1 pp. 217–20; ECF No. 15-1 pp. 7–10]. In that Rule 3.800(a) Motion, Petitioner argued that he was serving an illegal life sentence because the Florida Supreme Court's decision in *Lewars* should apply retroactively to his case [ECF No. 14-1 pp. 219–220]. On May 2, 2019, the trial court denied Petitioner's Motion, determining that Petitioner's sentence had become final two years prior to the *Lewars* decision, and that the *Lewars* decision did not apply retroactively [ECF No. 14-1 pp. 227–28 (incorporating State's response)]. The Fourth District Court of Appeals subsequently affirmed the trial court's denial of Petitioner's Rule 3.800(a) Motion, agreeing that *Lewars* does not apply retroactively under Florida's *Witt* retroactivity law. *Sims v. State*, 286 So. 3d 292, 293–94 (Fla. Dist. Ct. App. 2019) (citing *Witt v. State*, 387 So. 2d 922, 931 (Fla. 1980)).[3] Petitioner appealed to the Florida Supreme Court, but on April 16, 2020, the Florida Supreme Court declined to accept jurisdiction—making the Fourth District Court of Appeals' decision final [ECF No. 14-1 pp. 278–79, 314].

---

[3] While Petitioner's appeal on his first Rule 3.800(a) Motion was pending, the Florida legislature amended section 775.082(9)(a) to abrogate *Lewars*. Ch. 2019-167, § 30, at 37–38, Laws of Fla. (amending § 775.082(9)(a)(1)). The amended statute now reads, in pertinent part: "'Prison releasee reoffender' means any defendant who commits, or attempts to commit: [qualifying offenses] within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor, *a county detention facility* following incarceration for an offense . . . ." Fla. Stat. § 775.082(9)(a)1 (emphasis added) (2019).

**First District Court of Appeals' Decision in *Williams v. State***

On November 4, 2020, Florida's First District Court of Appeals issued an opinion in *Williams v. State*, 304 So. 3d 843 (Fla. Dist. Ct. App. 2020), a case involving another prisoner seeking state habeas relief. In *Williams*, the defendant was serving a fifteen-year sentence because he, like Petitioner, was classified as a PRR after serving time in a county jail. *Id.* at 843. Unlike Petitioner, however, the defendant in *Williams* had sought review in the Florida Supreme Court as to the lawfulness of his PRR status on direct appeal, arguing that the First District Court of Appeals' interpretation of the PRR provision conflicted with the Second District Court of Appeals' interpretation in *Lewars v. State*, 277 So. 3d 143 (Fla. Dist. Ct. App. 2017). *Id.* The First District Court of Appeals declined to certify the issue to the Florida Supreme Court, effectively ending Williams's direct appeal. *Id.* But then the Florida Supreme Court issued *Lewars*, prompting Williams to initiate state post-conviction relief proceedings—ultimately leading the First District Court of Appeals to grant habeas relief on miscarriage-of-justice grounds, to vacate Mr. Williams's sentence, and to remand for resentencing. In granting such relief, the First District Court of Appeals recognized Williams's prior request for certification of a conflict, stating as follows: "Because Petitioner asked for certification of conflict with *Lewars*, it would be manifestly unjust under the circumstances to deny Petitioner the same relief as was afforded the defendant in *Lewars*." *Id*.

**Second Rule 3.800(a) Motion to Correct Illegal Sentence**

Following the First District Court of Appeals' decision in *Williams*, Petitioner filed a second Rule 3.800(a) Motion [ECF No. 25-2 pp. 73–77]. Despite not challenging his conviction and sentence on direct appeal to the Florida Supreme Court, Petitioner argued in his second Rule 3.800(a) Motion that he should be afforded the same relief given to the defendant in *Williams*,

6

noting that Petitioner's sentence was not final at the time *Lewars* was decided [ECF No. 25-2 pp. 73–77]. On April 25, 2021, the state trial court denied Petitioner's second Rule 3.800(a) Motion, and on August 26, 2021, the Fourth District Court of Appeals affirmed [ECF No. 25-2 pp. 79–80, 147].

**Instant 28 U.S.C. § 2254 Petition**

Petitioner filed the instant Habeas Petition on April 1, 2021 [ECF No. 1], more than four years after his state conviction and sentence became final (and prior to the state trial court ruling on Petitioner's second Rule 3.800(a) Motion). Petitioner asserts that he "does not qualify as a PRR," that "his life sentence is illegal," and that "the failure to provide [him] relief violates the Constitution" [ECF No. 1 p. 6]. At bottom, Petitioner makes a broad argument that the state courts violated his Fourteenth Amendment due process rights by (1) failing to apply *Lewars* retroactively to his case; (2) failing to apply Florida's "pipeline" doctrine to his case; and (3) treating him differently than the defendant in *Williams* who received habeas relief [ECF No. 1 pp. 17–19].

After referral from this Court, oral argument, and supplemental briefing [ECF No. 23], Judge McCabe issued the Report [ECF No. 28]. Judge McCabe deemed the Petition timely under 28 U.S.C. § 2244(d)(1)(D) but recommended dismissal for failure to exhaust state remedies and denial on the merits for failing to raise a cognizable or meritorious federal constitutional claim [ECF No. 28]. Both parties filed competing Objections to the Report as described above [ECF Nos. 29, 30]. The Report is ripe for adjudication.

**LEGAL STANDARD**

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## DISCUSSION

### I. Timeliness under 28 U.S.C. § 2244(d)(1)(D)

As noted, Judge McCabe determines in the Report that the Petition is timely under 28 U.S.C. § 2244(d)(1)(D) "to the extent it raises a Fourteenth Amendment due process claim based on an alleged disparity with the *Williams* case" [ECF No. 28 p. 10].[4] Judge McCabe reached this

---

[4] Respondent objects to the Report's decision even to consider timeliness under section 2244(d)(1)(D), pointing out that Petitioner did not invoke section 2244(d)(1)(D) in his initial Petition or Reply [ECF No. 29 p. 4]. A court has discretion in habeas cases to raise the timeliness of a petition *sua sponte* so long as it gives the parties notice and an opportunity to respond, and otherwise comports with the dictates of Supreme Court authority on the subject—including the instruction not to consider a timeliness defense *sua sponte* in cases of intentional relinquishment. *See Wood v. Milyard*, 566 U.S. 463, 473 (2012); *Day v. McDonough*, 547 U.S. 198, 210–11 (2006); *Jackson v. Sec'y for Dep't of Corr.*, 292 F.3d 1347, 1349 (11th Cir. 2002). Judge McCabe's timeliness review in this case accorded with those authorities. Petitioner first addressed the matter of timeliness in the Petition itself, albeit relying on *Lewars* as a new "predicate" and citing section 2244(d)(2), not 2244(d)(1)(D) [ECF No. 1 p. 14]. Respondent raised the defense of untimeliness in its Response, focusing on the date on which Petitioner's conviction became final and the length of untolled time, *see* 28 U.S.C. § 2244(d)(1)(A), (d)(2) [ECF No. 13 p. 9]. Petitioner then responded on the matter of timeliness in Reply, at that point citing section 2244(d)(1)(C) and (d)(1)(D) and relying again on *Lewars* as the triggering point for assessing timeliness [ECF No. 15 pp. 2, 3]. Following those steps, Judge McCabe held a hearing and gave all parties notice and an opportunity to be heard on the section 2244(d)(1)(D) issue, ordering supplemental briefing on "whether a disparate sentencing result achieved by another defendant in another court can constitute a 'factual predicate' for purposes of 28 U.S.C. § 2244(d)(1)(D)" [ECF No. 24]. On this record, in the absence of any intentional relinquishment, and given the ample procedure afforded, the Court sees no abuse of discretion in Judge McCabe's

8

conclusion by treating the *Williams* decision—in which the First District Court of Appeals afforded habeas relief to Mr. Williams—as a new "factual predicate" sufficient to trigger the one-year limitation period under 28 U.S.C. § 2244(d)(1)(D) [ECF No. 28 pp. 9–10].[5] That conclusion is incorrect: the First District Court of Appeals' legal decision in another case regarding another defendant did not affect the fact of Petitioner's conviction, sentence, or judgment. The *Williams* decision thus does not qualify as a new "factual predicate" to be "discovered through the exercise of due diligence" within the meaning of 28 U.S.C. § 2244(d)(1)(D).[6]

Congress enacted AEDPA "with the 'overriding purpose' of achieving finality in federal and state criminal cases." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1154 (11th Cir. 2014). "In keeping with its finality purpose, § 2244(d)(1) restricts a state prisoner's limitations period for filing a § 2254 habeas petition to one year, which begins to run from the latest of four specified dates." *Id.* (internal quotation marks and citations omitted). The only asserted avenue left for timeliness in this case is section 2244(d)(1)(D), which provides that the one-year federal limitations period runs from "the date on which the factual predicate of the claim or claims

---

consideration of section 2244(d)(1)(D). Judge McCabe also addressed the merits of the Petition, and neither party has been materially prejudiced on account of the Report's close inquiry of section 2244(d) as a whole, including subsection (d)(1)(D).

[5] Judge McCabe correctly determined that the Petition is untimely under 28 U.S.C. § 2244(d)(1)(A) and (C) [ECF No. 28 pp. 8–9]. Petitioner raises no objection to those conclusions.

[6] Rounding out the section 2244(d)(2)(D) inquiry, Judge McCabe also concluded that Petitioner acted with due diligence because the purported new "fact," *Williams*, "arose not in Petitioner's own case, but in another case over which he had no control" [ECF No. 28 p. 10]. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002) ("[T]he court should begin the timeliness inquiry under § 2255(4) by determining whether the petitioner exercised due diligence . . . ."). The Court does not disagree that Petitioner pursued relief diligently following the decision in *Williams*, but for the reasons stated below, *Williams* does not constitute a new "factual predicate" to begin with under Section 2255(d)(1)(D), making inapt the "due diligence" inquiry in this case.

presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Section 2244(d)(1)(D), like the analogous provision in section 2255(f)(4),[7] has been referred to as the "newly discovered evidence provision,"[8] and it has been applied to a limited set of "factual predicates": "(1) [the] receipt of a copy of an appellate brief and discovery of an attorney's failure to file an appeal, (2) vacatur of a prior state conviction, and (3) the date of a state parole board's decision." *Frederick*, 300 F. App'x at 733 (internally citing *Aron*, 291 F.3d at 712; *Rivers v. United States*, 416 F.3d 1319, 1322 (11th Cir. 2005); and *Day v. Hall*, 528 F.3d 1315, 1317 (11th Cir. 2008)). As the Eleventh Circuit has explained in describing the requirements of section 2244(d)(1)(D), "'it should go without saying that a factual predicate must consist of *facts*.'" *Cole*, 768 F.3d at 1155 (11th Cir. 2014) (italics in original) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012)); *id.* at 1155 ("The 'factual predicate' also has been referenced as the underlying 'vital facts' of a petitioner's claim." (quoting *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012)).

Against this backdrop, Petitioner's reliance on the *Williams* case as a new "factual predicate" fails. The plain language of section 2244(d)(1)(D) refers to facts, yet the *Williams* decision is a legal opinion that did not impact the fact of Petitioner's sentence. *Bazemore v. United States*, 595 F. App'x 869, 873 (11th Cir. 2014) (citing 28 U.S.C. § 2254(f)(4));*see also Madaio v. United* States, 397 F. App'x 568, 570 (11th Cir. 2010) ("[T]he discovery of a new court legal

---

[7] 28 U.S.C. § 2255(f)(4) (triggering provision that depends on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").

[8] *See McQuiggin v. Perkins*, 569 U.S. 383, 400–01 (2013); *Melson v. Allen*, 548 F.3d 993, 998–99 (11th Cir. 2008); *Frederick v. McNeil*, 300 F. App'x 731, 733 (11th Cir. 2008) (citing cases).

opinion, as opposed to new factual information affecting the claim, does not trigger the limitations period" under section 2255(f)(4)). Indeed, *Williams* did not arise in Petitioner's proceeding, and it did not alter the fact or existence of Petitioner's judgment in any factual way [*see* ECF No. 28 p. 10 (noting that *Williams* did not arise in Petitioner's case)].

Petitioner has cited no authority in which a court has deemed a legal opinion in another defendant's case a "factual predicate" satisfying section 2244(d)(1)(D) or its sister provision in section 2255(f)(4). Nor is the Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295 (2005), such a case. In *Johnson*, a federal court imposed an enhanced sentence on Mr. Johnson based on a prior conviction in Georgia state court. *Id*. at 298. The Georgia trial court subsequently vacated that state conviction after determining that Mr. Johnson had not voluntarily waived his right to counsel. *Id.* at 301. Within three months of the vacatur of his state court conviction, Mr. Johnson filed a habeas petition under section 2255 seeking relief from his federal sentence—relying on the state vacatur order as "new evidence" supporting timeliness under section 2255(f)(4). *Id.* Ultimately, after not prevailing in the Eleventh Circuit, the Supreme Court granted Mr. Johnson's petition to address "whether vacatur of a prior state conviction used to enhance a federal sentence can start the 1-year limitation period under the fourth alternative of the § 2255 rule." *Id.* at 302. On that question, the Court answered yes—the state-court vacatur of a defendant's conviction used to enhance a federal sentence can be treated as a matter of "fact" for purposes of AEDPA's newly-discovered limitation provision, provided the petitioner shows due diligence in seeking the state court vacatur.[9] *Id.* at 302.

---

[9] The Supreme Court ultimately determined that Mr. Johnson's Section 2255 Petition remained untimely, because Mr. Johnson was not diligent in seeking the vacatur of his state court conviction. *Johnson*, 544 U.S. at 311.

The sequence of events in *Johnson* is nowhere close to what happened here, for the reasons already stated. No sentence or conviction was vacated in Petitioner's case, nor did anything happen in Petitioner's proceeding itself to change the fact or existence of his conviction or judgment. What happened was that another prisoner, Williams, sought and obtained habeas relief on miscarriage-of-justice grounds, citing *Lewars* and his own earlier attempt to seek Florida Supreme Court review via a certification of conflict. But nothing about Williams's case had the effect of altering the existence or fact of Petitioner's conviction, sentence, or judgment. Accordingly, *Johnson* does not apply. *See Sanchez v. United States*, 318 F. App'x 801, 804 n.6 (11th Cir. 2009) ("The Supreme Court [in *Johnson*] did not address whether court opinions also constitute matters of fact. Thus, the 'court ruling' to which [defendant] referred was not the sort of court ruling at issue here, and *Johnson* is irrelevant."); *see also Keller v. Pringle*, 867 F.3d 1072, 1075 (8th Cir. 2017) (rejecting the defendant's argument that *Johnson* supported his position that new legal opinions qualified as "factual predicates" under section 2244(d)(1)(D) because "the state court decisions involving other defendants did not invalidate any operative fact in [defendant's] case").

Because *Williams* does not constitute a new fact triggering the statute-of-limitations under section 2244(d)(1)(D), the timeliness of the instant Petition is properly determined based on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). And, as Judge McCabe correctly pointed out, Petitioner's federal limitations period under section 2244(d)(1)(A) expired on January 31, 2018 [ECF No. 28 p. 8]. *See Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (noting that limitations period should be calculated using "the anniversary date of the

triggering event"). Petitioner did not file the instant Petition until April 1, 2021, over three years after the federal limitations period expired. Therefore, the instant Petition is untimely.

**II.     Exhaustion and Merits**

Although the Court disagrees with the Report's determination on timeliness, the Court accepts the Report's other well-reasoned conclusions, both on exhaustion and on the merits of Plaintiff's federal due process claims. As to those issues, Petitioner makes a series of generalized and unmeritorious objections to the Report [ECF No. 30].

Petitioner first "objects to the finding" in the background section of the Report in which Judge McCabe notes that Petitioner did not raise the issue of his PRR status—or any issue related to the constitutionality of his sentence—in his first Rule 3.850 Motion [ECF No. 30 p. 2 (objecting to ECF No. 28 p. 4 ("Petitioner raised numerous grounds for relief, but did not raise his PRR status or any issue relating to the constitutionality of his sentence."))]. The basis of this objection is unclear, but in any event, the Report is correct that Petitioner did not raise any claim in his first Rule 3.850 Motion related to his PRR status or the constitutionality of his sentence. Petitioner does not dispute that point in his objection, conceding that the PRR was not "an issue to be litigated in the 3.850 Motion" [ECF No. 30 p. 2]. This objection fails.

Petitioner next criticizes the Report's conclusion that he did not raise a federal due process claim in state court [ECF No. 30 pp. 2–3]. Petitioner says he sufficiently raised a federal due process claim because (1) "paragraph 6 of his Florida Rule of Criminal Procedure 3.800 Motion . . . specifically and correctly indicated that the United States Supreme Court precedent" governed his pipeline argument; and (2) the "WHEREFORE" clause in his Rule 3.800 Motion "argued denial of relief would be a 'due process' violation" [ECF No. 30 ¶ 3]. These arguments are without merit. As to Petitioner's assertion that he invoked United States Supreme Court precedent,

specifically *Padilla v. Kentucky*, 559 U.S. 356 (2010), in paragraph 6 of his Rule 3.800 motion, the Rule 3.800 motion made merely a passing reference to the Supreme Court's decision in *Padilla* and to the Florida Supreme Court's reliance on *Padilla* in *Castano v. State*, 119 So. 3d 1208 (Fla. 2012) [ECF No. 25-2 p. 74]. This fleeting citation to *Padilla*, with no discussion of due process, is insufficient to fairly present any federal constitutional issue before the State court.[10] Nor is the singular reference to "due process" at the bottom of the Motion in the "WHEREFORE" clause—again with no development or analysis—adequate to raise a federal due process claim. Indeed, as the Eleventh Circuit has stated, "'[o]blique references which hint that a [federal] theory may be lurking in the woodwork will not turn the trick.'" *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). Only after a state prisoner has afforded the state courts an opportunity to consider the "exact same claim" (and take any corrective action) can a federal court consider that claim on federal habeas review. *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1158 (11th Cir. 2022), *cert. denied sub nom*. *Green v. Dixon*, 143 S. Ct. 982 (2023). These principles are "vital" to the maintenance of "finality, federalism, and comity between state and federal courts." *Id.* Petitioner's objection fails.

Petitioner's final objections go to the merits of his due process claim (and to the subsidiary due process claims raised therein) [ECF No. 30 pp. 3–4; *see* ECF No. 1 pp. 17–19; ECF No. 28 p. 12 (describing Petitioner's claims within the umbrella of due process)]. As he argued in the Petition and Reply, Petitioner asserts that his PRR issue was "still in the Pipeline" at the time *Lewars* was decided and that he was similarly situated to the defendant in *Williams* [ECF No. 30

---

[10] *Padilla* concerned ineffective assistance of counsel in the immigration context. *Castano* applied *Padilla* to a state defendant because *Padilla* was issued while that state defendant's post-conviction motion was pending on the same issue. Neither decision cites federal due process or the Fourteenth Amendment.

14

¶¶ 5–6]. The Court disagrees for the reasons stated in the Report and further explained herein. Even assuming Petitioner's due process claim(s) were timely and fully exhausted, and further assuming that a state court violates a defendant's federal due process rights by applying a case retroactively to one prisoner and not another who is similarly situated, no such violation is present here because Petitioner and Mr. Williams are not similarly situated. As the Report explains [ECF No. 28 pp. 14–18], Mr. Williams and Petitioner were not similarly situated at the time *Lewars* was decided, and Florida did not misapply its so-called "pipeline" rule—a rule that requires disposition of a case on appeal to be "made in accord with the law in effect at the time of the appellate court's decision rather than the law in effect at the time the judgment appealed was rendered." *Hendeles v. Sandford Auto Auction, Inc.*, 364 So. 2d 467, 468 (Fla. 1978). In other words, Petitioner could receive the benefit of *Lewars* under Florida's pipeline rule only if "an appellate court mandate [had] not yet issued on [his] direct appeal." *Castanoe*, 119 So. 3d at 1210 (Pariente, J., concurring).[11] Yet in Petitioner's case, the mandate on his direct appeal was issued on November 18, 2016 [ECF No. 25-2 p. 12], over two years before the Florida Supreme Court decided *Lewars*. Thus, Petitioner could not have received the benefit of *Lewars* under Florida's pipeline rule. Petitioner's pipeline argument fails.

Petitioner's assertion that the First District Court of Appeals retroactively applied *Lewars* to Mr. Williams is also incorrect. The First District Court of Appeals did not conduct a retroactivity analysis when it granted Mr. Williams the benefit of the Florida Supreme Court's decision in *Lewars*. *Williams*, 304 So. 3d at 843; *compare with Sims*, 286 So. 3d at 293–294. Rather, as discussed above, the First District Court of Appeals granted Williams habeas relief

---

[11] This is analogous to the federal rule established in *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.").

because on direct appeal, Williams "asked for certification of conflict with [the Second District Court of Appeals' decision in] *Lewars*," making it "manifestly unjust under the circumstances to deny [Mr. Williams] the same relief as was afforded the defendant [by the Florida Supreme Court] in *Lewars*." *Williams*, 304 So. 3d at 843. That unique posture is very different from the procedural posture pertinent to Petitioner, whose conviction was already final and who had already filed his Rule 3.850 postconviction motion prior to the Florida Supreme Court issuing its decision in *Lewars*. Petitioner's final objections to the Report's merits-based conclusions also fail.

### III. Certificate of Appealability

Under 28 U.S.C. § 2254(c)(2), "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2254(c)(2). To meet this standard, a petitioner must show that "jurists of reason" would find debatable both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)). It is doubtful whether a certificate of appealability is warranted in this case based on the record and authorities cited herein. But out of an abundance of caution, and in light of the Report, the Court issues a certificate of appealability on the following issues as modified from the Report:

(1) Whether the First District Court of Appeal's legal ruling in *Williams v. State*, 304 So. 3d 843 (Fla. Dist. Ct. App. 2020), constitutes a new "factual predicate" under 28 U.S.C. § 2244(d)(1)(D) as applied to Petitioner;

(2) Whether Petitioner properly exhausted in state court his federal due process claim as raised in the instant Petition;

(3) Whether the state court's decision not to give Petitioner the benefit of *State v. Lewars*, 259 So. 3d 793 (Fla. 2018), in his motion to correct illegal sentence, *Sims v. State*, 286 So. 3d 292 (Fla. Dist. Ct. App. 2019), "resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States."

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 28] is **ACCEPTED IN PART AND REJECTED IN PART** in accordance with this Order.

2. Petitioner's Petition for Relief from a Conviction or Sentence [ECF No. 1] is **DISMISSED** as untimely and unexhausted and alternatively **DENIED** on the merits.

3. A certificate of appealability shall issue on the three issues identified in this Order.

4. Final Judgment will be entered by a separate order.

5. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 17th day of August 2023.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record